IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **RI RONG WANG,**<br>individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**LUCKY SEVEN BUFFET INC.,**<br>d/b/a ASIAN BUFFET,<br>Serve Registered Agent:<br>Zhu Ming Lu<br>511 N.W. Barry Road<br>Kansas City, Missouri 64155,<br><br>and<br><br>**ZHU MING LU,**<br>individually and d/b/a ASIAN BUFFET,<br>Serve at:<br>511 N.W. Barry Road<br>Kansas City, Missouri 64155,<br><br>Defendant. | Case No. ________________________<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

## COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiff Ri Rong Wang ("Plaintiff" or "Ms. Wang"), individually and on behalf of all other similarly situated current and former tipped employees of Lucky Seven Buffet Inc. and Zhu Ming Lu, individually and doing business as Asian Buffet ("Defendants"), by and through undersigned counsel, states and alleges as follows for her Complaint against Defendants:

## I. NATURE OF THE ACTION

1. This is an action for unpaid minimum wages, unpaid overtime compensation, unlawfully retained and unlawfully deducted gratuities, liquidated damages, statutory penalties, prejudgment interest, and attorneys' fees and costs, brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 (the "FLSA"), and the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500–290.530 (the "MMWL"), together with pendent Missouri common-law claims.

2. Defendants own and operate Asian Buffet, a full-service Chinese buffet restaurant located at 511 N.W. Barry Road, Kansas City, Missouri 64155.

3. For more than six years, Defendants operated Asian Buffet on a simple and unlawful premise: the restaurant's waitstaff were paid nothing at all by their employer. Plaintiff and the other servers received no hourly wage, no cash wage, and no overtime premium. Their entire compensation consisted of the gratuities that customers voluntarily left for them.

4. Defendants compounded that violation by taking a portion of the very tips that constituted the servers' only income. Each month, Defendants required Plaintiff and other servers to hand over a fixed sum of their tip income to Defendants in exchange for a restaurant check; upon Plaintiff's information and belief, such exchange was so that Defendants could generate payroll records and Forms W-2 that falsely suggested the restaurant was paying wages. Defendants also deducted and withheld six percent (6%) of all credit-card gratuities; charged servers one hundred percent (100%) of the value of any customer bill left unpaid by a "dine-and-dash" customer; and, every four to five months, Defendants assessed each server approximately $40.00 to replace ordinary flatware lost to routine wear, washing, and cleaning.

5. Plaintiff worked approximately seventy-one (71) hours per week, six (6) days per week, from approximately 10:00 a.m. until 9:30 p.m. on weekdays and until 10:30 p.m. on weekends. She was never paid one and one-half times any regular rate for any of the approximately thirty-one (31) overtime hours she worked each week.

6. Defendants maintained no timekeeping system of any kind. Defendants kept no record of hours worked, posted no minimum-wage notice, gave no tip-credit notice, and issued no wage statement showing hours, rates, or tips — each in violation of 29 U.S.C. § 211(c), 29 C.F.R. Part 516, and Mo. Rev. Stat. §§ 290.520 and 290.525.

7. Defendants' violations were knowing and willful. When investigators from the Missouri Division of Labor Standards visited the restaurant, Defendants instructed the waitstaff to tell the investigators falsely that they worked only three to four hours per day, two to three days per week. Defendants harassed and threatened Plaintiff regarding her continued employment and the safety of her family, and Defendants told Plaintiff and the staff that anyone who reported the restaurant would lose his or her job, causing fear for their jobs and family.

8. Plaintiff brings Counts I, II, and III of this Complaint as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other similarly situated tipped employees. Plaintiff brings Counts V, VI, VII, and VIII as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the Missouri Class. Plaintiff brings Count IV, her FLSA retaliation claim, on her own behalf individually.

9. Plaintiff filed an administrative complaint with the Missouri Division of Labor Standards (Complaint No. MW-0326-348). By letter dated May 13, 2026, the Division advised Plaintiff that it had closed its file because it lacked statutory authority to compel payment of wages,

and expressly advised Plaintiff of her private right of action under Mo. Rev. Stat. § 290.527. Plaintiff now exercises that right.

## II. JURISDICTION AND VENUE

10. This Court has original subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b), which authorizes suit "in any Federal or State court of competent jurisdiction."

11. This Court has supplemental jurisdiction over Plaintiff's Missouri statutory and common-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same common nucleus of operative fact as the federal claims — namely, Defendants' compensation practices toward its tipped employees, including Plaintiff — and form part of the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Defendants because they reside in, are domiciled in, and continuously and systematically conduct business in the State of Missouri, and because the acts and omissions giving rise to this action occurred within the State of Missouri.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in and conduct business in this District, and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

14. Intradistrict assignment to the Western Division at Kansas City is proper under Local Rule 3.2 because the restaurant at which Plaintiff worked is located at 511 N.W. Barry Road, Kansas City, Clay County, Missouri, which lies within the Western Division.

## III. PARTIES

### A. Plaintiff

15. Plaintiff Ri Rong Wang is an adult individual who resides in Smithville, Clay County, Missouri.

16. Plaintiff was employed by Defendants as a server (waitress) at Asian Buffet from approximately May 1, 2019 through October 16, 2025.

17. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) and Mo. Rev. Stat. § 290.500(3).

18. At all times relevant to this Complaint, Plaintiff was engaged in commerce or in the production of goods for commerce, and/or was employed by an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

19. Plaintiff was not employed in a bona fide executive, administrative, or professional capacity, and no exemption under 29 U.S.C. § 213 or Mo. Rev. Stat. § 290.500(3) applies to her employment.

20. Plaintiff's written consent to become a party plaintiff pursuant to 29 U.S.C. § 216(b) is filed contemporaneously herewith as Exhibit A.

### B. Defendants

21. Defendant Lucky Seven Buffet Inc. is a general business corporation organized under the laws of Missouri with its principal place of business located in Clay County, Missouri, and doing business in Missouri under the name "Asian Buffet." Defendants' payroll records identify the employer as "DBA ASIAN BUFFET ZHU MING LU SOLE PROP," Employer Identification Number 82-2064005, with a business address of 511 N.W. Barry Road, Kansas City,

Missouri 64155, and a business telephone number of (816) 468-1685. The restaurant maintains a public website at www.asianbuffetmotogo.com.

22. Defendant Zhu Ming Lu is an adult individual who, according to Defendant's payroll records, operates and/or has operated Asian Buffet as a sole proprietorship. Those payroll records identify the employer as "DBA ASIAN BUFFET ZHU MING LU SOLE PROP," Employer Identification Number 82-2064005, with a business address of 511 N.W. Barry Road, Kansas City, Missouri 64155, and a business telephone number of (816) 468-1685. The restaurant maintains a public website at www.asianbuffetmotogo.com. Because Asian Buffet is operated as a sole proprietorship, Defendant Zhu Ming Lu is personally and individually liable for all obligations of the business, including the wage obligations at issue in this action.

23. At all times relevant to this Complaint, Defendants were an "employer" of Plaintiff and the putative collective and class members within the meaning of 29 U.S.C. § 203(d) and Mo. Rev. Stat. § 290.500(4). Defendants, directly and through agents, had the power to hire and fire the waitstaff, supervised and controlled their work schedules and conditions of employment, determined the rate and method of their compensation, and maintained (or failed to maintain) their employment records.

24. At all times relevant to this Complaint, Defendants operated an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A), in that Defendants (a) had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person — including food, beverages, kitchen equipment, cookware, flatware, tableware, cleaning supplies, point-of-sale terminals, and credit-card processing services — and (b) had an annual gross volume of sales made

or business done of not less than $500,000, exclusive of excise taxes at the retail level that are separately stated.

25. On information and belief, Asian Buffet's gross monthly revenue during the relevant period was approximately $350,000, corresponding to annual gross revenue of approximately $4,200,000 — far in excess of the $500,000 threshold set by 29 U.S.C. § 203(s)(1)(A)(ii).

26. Defendants accepted credit cards and debit cards issued by out-of-state financial institutions and processed those transactions through interstate payment networks, further establishing that Defendants' enterprise was engaged in commerce.

## IV. FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiff brings Counts I, II, and III of this Complaint as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following proposed collective:

> All individuals who worked as servers, waiters, waitresses, bussers, food runners, or other tipped front-of-house employees at Asian Buffet, 511 N.W. Barry Road, Kansas City, Missouri, at any time during the three (3) years preceding the filing of this Complaint through the date of final judgment (the "FLSA Collective").

28. On information and belief, the FLSA Collective consists of approximately fifteen (15) or more current and former workers, all of whom were subject to Defendants' uniform practice of paying no cash wage and unlawfully retaining and deducting from gratuities.

29. Plaintiff and the FLSA Collective members are "similarly situated" within the meaning of 29 U.S.C. § 216(b) because they held substantially similar job duties, worked substantially identical schedules (from approximately 10:00 a.m. until 9:30 p.m. on weekdays and until 10:30 p.m. on weekends, six days per week), and — most importantly — were subject to the same unlawful compensation policies established and enforced by Defendant.

30. The specific unlawful policies common to Plaintiff and the FLSA Collective include, without limitation:

(a) paying no cash wage whatsoever, such that tips constituted the workers' only compensation;

(b) failing to provide the notice required by 29 U.S.C. § 203(m)(2)(A) before purporting to satisfy any part of the minimum-wage obligation with tips;

(c) retaining employees' tips in violation of 29 U.S.C. § 203(m)(2)(B);

(d) deducting 6% of credit-card gratuities;

(e) charging employees for customer walkouts and for replacement flatware;

(f) requiring employees to remit a fixed monthly sum of tip income in exchange for a restaurant check;

(g) failing to pay any overtime premium for hours worked over forty (40) in a workweek; and

(h) failing to make, keep, and preserve accurate records of hours worked and wages paid.

31. Because Defendants maintained no timekeeping system and no accurate payroll records, the identities and contact information of the FLSA Collective members are, to the extent they exist at all, within Defendants' exclusive possession, custody, and control. Plaintiff therefore requests that the Court authorize notice pursuant to 29 U.S.C. § 216(b) and order Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, email addresses, dates of employment, and job titles of all putative collective members.

32. Because Defendants' violations were willful, the three-year statute of limitations set forth in 29 U.S.C. § 255(a) applies.

33. The statute of limitations should further be equitably tolled from the date of filing through the date on which court-authorized notice issues. Defendants' recordkeeping failures, failure to post the required notices, and express threats of retaliation prevented the putative collective members from learning of or asserting their rights.

## V. RULE 23 CLASS ACTION ALLEGATIONS

34. Plaintiff brings Counts V, VI, VII, and VIII of this Complaint as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following proposed class:

> All individuals who worked as servers, waiters, waitresses, bussers, food runners, or other tipped front-of-house employees at Asian Buffet, 511 N.W. Barry Road, Kansas City, Missouri, at any time during the applicable statute-of-limitations period preceding the filing of this Complaint through the date of final judgment, as determined with respect to each claim herein (the "Missouri Class").

35. Excluded from the Missouri Class are Defendants, Defendant Zhu Ming Lu's immediate family members, any managers or supervisors with authority over the class members, and the judicial officers assigned to this case and their staffs.

**A. Numerosity — Fed. R. Civ. P. 23(a)(1)**

36. On information and belief, the Missouri Class consists of at least fifteen (15) current and former employees, and likely substantially more when former employees over the full class period are counted. Joinder of all members is impracticable given the size of the class, the modest individual recoveries relative to the cost of individual litigation, the language barriers faced by many class members, and the class members' documented fear of retaliation by Defendant.

**B. Commonality — Fed. R. Civ. P. 23(a)(2)**

37. There are questions of law and fact common to the Missouri Class, including but not limited to: (a) whether Defendants paid class members any cash wage; (b) whether Defendants satisfied the conditions for reducing the cash wage of tipped employees under Mo. Rev. Stat. § 290.512; (c) whether class members' total compensation equaled or exceeded the Missouri minimum wage for all hours worked in each workweek; (d) whether Defendants paid class members overtime compensation as required by Mo. Rev. Stat. § 290.505; (e) whether Defendants' deductions from gratuities were lawful; (f) whether Defendants were unjustly enriched by the class members' uncompensated labor; and (g) the appropriate measure of damages, liquidated damages, and interest.

**C. Typicality — Fed. R. Civ. P. 23(a)(3)**

38. Plaintiff's claims are typical of the claims of the Missouri Class. Plaintiff and the class members held the same or substantially similar positions, worked the same schedule, and were subjected to the identical compensation policies described in this Complaint. Plaintiff's

claims arise from the same course of conduct and are based on the same legal theories as the claims of the class.

**D. Adequacy — Fed. R. Civ. P. 23(a)(4)**

39. Plaintiff will fairly and adequately protect the interests of the Missouri Class. Plaintiff has no interests antagonistic to or in conflict with those of the class, and has retained counsel competent and experienced in complex litigation.

**E. Predominance and Superiority — Fed. R. Civ. P. 23(b)(3)**

40. Common questions of law and fact predominate over any questions affecting only individual members. Defendants' liability turns on uniform policies applied to the class as a whole: whether it is lawful to pay restaurant servers no wage at all, to take their tips, and to work them seventy-one hours per week without an overtime premium. Individual issues, if any, are limited to the computation of damages.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual class members' damages, while substantial in the aggregate, may be too small relative to litigation costs to justify individual suits; most class members lack the resources, language access, and legal sophistication to prosecute individual claims; and the class members have expressed a well-founded fear of retaliation that a class proceeding mitigates. Concentrating the litigation in this forum avoids the risk of inconsistent adjudications and conserves judicial resources.

## VI. FACTUAL ALLEGATIONS

### A. Defendants' Restaurant Operation

42. Asian Buffet is a full-service Chinese buffet restaurant open to the general public at 511 N.W. Barry Road, Kansas City, Missouri. Defendants have operated the restaurant at that single location throughout the period relevant to this Complaint.

43. The restaurant is open seven days per week. The waitstaff report at approximately 10:00 a.m. and remain until approximately 9:30 p.m. Sunday through Thursday and until approximately 10:30 p.m. on Friday and Saturday.

44. Defendants employed approximately fifteen (15) workers at the restaurant, including servers, kitchen staff, and support staff.

45. Defendants personally, and through a manager who is Defendant Zhu Ming Lu's domestic partner, directed the day-to-day operations of the restaurant, set the waitstaff's schedules, set and enforced the compensation practices described below, and made all decisions regarding hiring, discipline, and termination.

### B. Plaintiff's Employment, Schedule, and Duties

46. Defendants hired Plaintiff as a server in approximately May 2019. Plaintiff worked continuously for Defendants until October 16, 2025.

47. Plaintiff worked six (6) days per week. Her shifts ran from approximately 10:00 a.m. to 9:30 p.m. on weekdays and from approximately 10:00 a.m. to 10:30 p.m. on weekends.

48. Plaintiff regularly worked approximately seventy-one (71) hours per workweek. Plaintiff was not provided bona fide, uninterrupted meal periods of thirty minutes or more that would be excludable from hours worked under 29 C.F.R. § 785.19.

49. Plaintiff's duties included serving food and beverages, taking orders, bussing tables, performing sidework, cleaning the restaurant, and performing food-preparation work.

50. A substantial portion of Plaintiff's work — approximately twenty-six (26) hours per workweek, or roughly thirty-seven percent (37%) of her total hours — consisted of sidework, cleaning, and food-preparation duties that did not produce tips and were not part of a tipped occupation. During those hours, Plaintiff was engaged in a separate, non-tipped occupation for which no tip credit could lawfully be claimed under 29 C.F.R. § 531.56(e) and Mo. Rev. Stat. § 290.512.

**C. Defendants Paid Plaintiff No Wages**

51. From her first day of employment, Defendants told Plaintiff that she would be paid only in tips and would receive nothing else.

52. Defendants never established, communicated, or paid Plaintiff any hourly rate of pay. Plaintiff's hourly rate at hire was zero. Plaintiff's hourly rate at the end of her employment was zero. Plaintiff's hourly rate never changed, because Defendants never established one.

53. Defendants never paid Plaintiff any overtime premium for any hour worked in excess of forty (40) hours in a workweek.

54. Plaintiff earned approximately $100.00 per day in gratuities. Spread across the approximately 11.8 hours she worked each day, this amounted to roughly $8.47 per hour — an amount below the Missouri minimum wage in every year from 2019 forward, and far below the overtime rate to which Plaintiff was entitled for her thirty-one (31) weekly overtime hours.

**D. The Monthly Tip Turn-In Scheme and the Forms W-2**

55. Each month, Defendants and the store manager required Plaintiff and the other servers to turn over a specified sum of their tip money to Defendant. In exchange, Defendants issued the server a restaurant business check.

56. On Plaintiff's information and belief, the purpose and effect of this arrangement was to manufacture the appearance of a payroll. The money the servers received back by check was not new compensation from Defendant; it was, in substance, the servers' own tip income processed and manipulated through Defendants' books so that Defendants could generate payroll records and Forms W-2 concealing the fact that the restaurant paid no base wages at all.

57. Defendants issued to Plaintiff Forms W-2 reporting the following amounts for the years indicated:

| Tax Year | Box 1 — Wages, tips, other compensation | Box 3 — Social security wages | Box 7 — Social security tips |
|---|---|---|---|
| 2020 | $3,000.00 | $3,000.00 | $0.00 |
| 2021 | $13,682.00 | $8,400.00 | $5,282.00 |
| 2022 | $13,635.00 | $6,000.00 | $7,645.00 |
| 2023 | $16,037.00 | $6,000.00 | $10,037.00 |
| 2024 | $24,123.00 | $11,200.00 | $12,923.00 |
| 2025 | $19,145.00 | $9,500.00 | $9,645.00 |

58. Even taken at face value, these Forms W-2 establish gross underpayment. In 2024, for example, Defendants reported total wages and tips of $24,123.00. Plaintiff worked approximately 3,692 hours that year (71 hours per week for 52 weeks). At the 2024 Missouri minimum wage of $12.30 per hour, Plaintiff was owed approximately $55,325 in straight-time and overtime compensation for that single year — more than double what Defendants reported paying her in wages and tips combined.

59. Defendants issued Plaintiff no wage statements showing the number of hours Plaintiff worked, her hourly rate of pay, total tips paid out, or any overtime hours or overtime rate for any year listed in the paragraph 57.

60. Defendants' issued Forms W-2 do not show the number of hours Plaintiff worked, her hourly rate of pay, total tips paid out, or any overtime hours or overtime rate.

**E. Defendants' Unlawful Deductions From and Retention of Gratuities**

61. Plaintiff received tips directly from customers in cash and received credit-card tips in cash at the end of each shift.

62. Defendants deducted six percent (6%) of all credit-card gratuities before remitting them to Plaintiff. On information and belief, this deduction exceeded Defendants' actual proportionate cost of processing the credit-card transactions.

63. Defendants required Plaintiff and the other servers to bear one hundred percent (100%) of the cost of any customer bill left unpaid by a "dine-and-dash" customer. Customer walkouts are an ordinary and predictable cost of operating a restaurant and are a business expense of the employer, not the employee.

64. Every four to five months, Defendants required each server to pay approximately $40.00 toward the replacement of forks, spoons, and other flatware. On Plaintiff's information and belief, the flatware losses resulted from ordinary wear, washing, disposal, and cleaning in the normal course of restaurant operations, and were not attributable to any misconduct by Plaintiff or the other servers.

65. These deductions were made for the primary benefit and convenience of Defendants. They were not "facilities" within the meaning of 29 U.S.C. § 203(m)(1) or 29 C.F.R. Part 531, Subpart B, and they may not lawfully be used to reduce an employee's wages below the

applicable minimum wage or to reduce any overtime compensation due. See 29 C.F.R. §§ 531.35, 531.36(b), 531.37(b), 778.315.

66. Because Defendants paid Plaintiff no cash wage at all, every one of these deductions necessarily cut into the minimum wage and overtime compensation to which Plaintiff was entitled.

67. Independent of the minimum-wage analysis, 29 U.S.C. § 203(m)(2)(B) prohibits an employer from keeping tips received by its employees for any purpose, regardless of whether the employer takes a tip credit. Defendants' 6% credit-card deduction exceeded Defendants' actual proportionate credit-card processing costs in violation of that prohibition.

**F. Defendants Never Satisfied the Conditions for a Tip Credit**

68. Defendants never informed Plaintiff of the provisions of 29 U.S.C. § 203(m)(2)(A). Specifically, Defendants never informed Plaintiff of: (a) the amount of the cash wage Defendants would pay; (b) the additional amount by which Plaintiff's wages would be increased on account of a tip credit; (c) that the tip credit could not exceed the value of tips actually received; (d) that all tips received must be retained by the employee except for a valid tip pool; or (e) that the tip credit would not apply unless Plaintiff had been informed of these provisions. See 29 C.F.R. § 531.59(b).

69. Defendants likewise never informed Plaintiff, as required under Missouri law, that the tipped cash wage must equal at least fifty percent (50%) of the state minimum wage, or that Defendants were obligated to make up the difference if tips plus cash wage failed to reach the full Missouri minimum wage. See Mo. Rev. Stat. § 290.512.

70. Defendants never asked Plaintiff to sign any document regarding pay, tip credits, or tip pooling, and never provided any written explanation of tip pooling or tip credits.

71. Defendants did not post the Missouri minimum-wage poster, the federal FLSA poster (29 C.F.R. § 516.4), or any other required notice anywhere Plaintiff could see it.

72. Because Defendants failed to give the required notice and because Defendants unlawfully retained portions of Plaintiff's tips, Defendants forfeited any entitlement to a tip credit under 29 U.S.C. § 203(m)(2)(A) and Mo. Rev. Stat. § 290.512 for the entirety of Plaintiff's employment. Defendants are therefore liable for the full applicable minimum wage for every hour Plaintiff worked, without offset for tips received, together with overtime computed on a regular rate of not less than the full minimum wage.

**G. Defendants Kept No Records of Hours Worked**

73. Defendants maintained no time clock, no point-of-sale timekeeping function, no paper timesheets, and no other system for recording the hours worked by Plaintiff or the other waitstaff. Employees simply arrived at 10:00 a.m. and left at closing.

74. Defendants thereby violated 29 U.S.C. § 211(c) and 29 C.F.R. §§ 516.2 and 516.28, which require employers to make, keep, and preserve records of hours worked each workday and each workweek, wages paid, tips reported, and the amount of any tip credit claimed.

75. Defendants likewise violated Mo. Rev. Stat. § 290.520 and § 290.525(2) and the regulations promulgated thereunder.

76. Because Defendants failed to keep the records the law required them to keep, Plaintiff and the collective and class members may prove the amount and extent of their uncompensated work by just and reasonable inference, and the burden shifts to Defendants to come

forward with evidence of the precise amount of work performed or with evidence negating the reasonableness of the inference to be drawn from Plaintiff's evidence.

**H. Defendants' Willfulness, Concealment, and Threats**

77. Investigators from the Missouri Division of Labor Standards visited Asian Buffet on two occasions and questioned employees about their hourly pay and weekly hours.

78. Before and between those visits, Defendants instructed the waitstaff to tell the investigators falsely that they worked only three to four hours per day and only two to three days per week — when in fact they worked from 10:00 a.m. until 9:30 p.m. or 10:30 p.m., six days per week.

79. Plaintiff refused to give false information to the investigators at the investigators' first visit.

80. After Plaintiff refused to give the scripted false information to investigators, Defendants and the store manager harassed and threatened Plaintiff regarding her job and regarding the safety of her family.

81. Defendants told the waitstaff that if any of them reported the restaurant to the state agency, they would lose their jobs. Defendants further told employees that if they answered anything "not correct," they would lose their jobs.

82. Because of Defendants' threats and resulting fear of imminent danger to herself and her family, Plaintiff believed she was left with no reasonable choice but to relent to Defendants' coercion, and give the false, employer-scripted answers at the investigators' second visit.

83. Defendants' instruction to employees to give false information to state wage investigators, their failure to post required notices, their refusal to maintain any time records, and their threats of retaliation all demonstrate that Defendants knew their pay practices were unlawful

and they acted in reckless disregard of the requirements of the FLSA and the MMWL. Defendants' violations were therefore willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish the good-faith defense of 29 U.S.C. § 260.

84. Defendants' affirmative concealment of their pay practices — including the manufactured payroll checks, the absence of any posted notice, and the coerced false statements to state investigators — warrants equitable tolling of the applicable limitations periods as to Plaintiff and the putative collective and class members.

**I. Plaintiff's Injury and Separation**

85. On October 16, 2025, Plaintiff was injured at work while attempting to physically stop customers who were leaving the restaurant without paying. Plaintiff acted under Defendants' standing policy requiring waitstaff to intercept "dine-and-dash" customers and to pay unpaid bills out of their own pockets.

86. Plaintiff has not worked at Asian Buffet since that date. Defendants never provided Plaintiff any formal notice of termination, but records of the Missouri Department of Labor reflect that Plaintiff was separated from employment effective October 16, 2025.

87. Defendants have never paid Plaintiff the wages owed for her final pay period or for any prior period of her employment.

**J. Administrative Complaint**

88. On January 13, 2026, Plaintiff filed a Minimum Wage Complaint with the Missouri Department of Labor and Industrial Relations, Division of Labor Standards, alleging underpayment of wages, tipped-employee violations, unpaid overtime, and failure to receive a final paycheck, and estimating the amount due at $58,826.45. The complaint was docketed as Complaint No. MW-0326-348.

89. By letter dated May 13, 2026, Patrick Watkins, Program Manager for Wage & Hour of the Division of Labor Standards, notified Plaintiff that the assigned Wage and Hour Specialist was unable to resolve the matter and that the Division had closed its file. The letter expressly advised that the Division "do[es] not have authority to pursue wages for unpaid workers" and that Plaintiff has "the right to file a private right of action" under Mo. Rev. Stat. § 290.527. A true and correct copy of that letter is attached as Exhibit B.

90. Plaintiff has exhausted all conditions precedent, if any, to the filing of this action.

**K. Damages**

91. At all relevant times, the applicable Missouri minimum wage was:

$8.60 per hour in 2019;

$9.45 in 2020;

$10.30 in 2021;

$11.15 in 2022;

$12.00 in 2023;

$12.30 in 2024;

$13.75 in 2025; and

$15.00 in 2026.

The federal minimum wage was $7.25 per hour throughout the relevant period.

92. Working 71 hours per workweek, Plaintiff was entitled each week to 40 hours of straight-time pay at the applicable minimum wage plus 31 hours of overtime pay at one and one-half times that rate — the equivalent of 86.5 straight-time hours per week.

93. Applying the applicable minimum-wage rates to Plaintiff's schedule of seventy-one (71) hours per workweek, Defendants were required to pay Plaintiff approximately $324,000 in straight-time and overtime compensation over the course of her employment. Defendants did not pay Plaintiff the wages required by the FLSA and the MMWL. This estimate excludes liquidated damages, interest, and the separate recovery of unlawfully retained tips. The precise amount of unpaid compensation is based upon Plaintiff's work schedule and the records currently available to her and is subject to revision following discovery, including discovery concerning Defendants' payroll records and any amounts for which Defendants may claim a lawful credit or offset.

94. Plaintiff is entitled to recover unpaid minimum-wage and overtime compensation accruing within the applicable limitations periods, together with applicable liquidated damages, unlawfully retained tips, prejudgment interest, attorneys' fees, and costs. Because Defendants' violations of the FLSA were willful, Plaintiff seeks recovery for the three-year limitations period provided by 29 U.S.C. § 255(a), as well as any additional period for which the limitations period is equitably tolled as alleged herein. The precise amount of Plaintiff's recoverable damages will be established through discovery and at trial.

## VII. CAUSES OF ACTION

### COUNT I
### Failure to Pay Minimum Wage — Fair Labor Standards Act
### 29 U.S.C. §§ 203(m), 206(a), 216(b)
### (On Behalf of Plaintiff and the FLSA Collective)

95. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 94 above as though fully set forth herein.

96. Section 206(a) of the FLSA requires every covered employer to pay each of its employees not less than the applicable federal minimum wage for every hour worked in a workweek.

97. An employer may satisfy part of that obligation with a tip credit only if it (a) informs the employee of the provisions of 29 U.S.C. § 203(m)(2)(A) and (b) permits the employee to retain all tips received, except for a valid tip pool among employees who customarily and regularly receive tips.

98. Defendants satisfied neither condition. Defendants gave Plaintiff no tip-credit notice, and Defendants did not permit Plaintiff to retain all of her tips. Defendants therefore may not claim any tip credit and are liable for the full minimum wage for every hour worked.

99. Defendants also failed to pay Plaintiff any cash wage whatsoever for a substantial portion of her hours, and the wages Defendants did report were, in substance, Plaintiff's own tip money returned to her.

100. In the alternative, and independent of the foregoing, Defendants may not claim a tip credit for the approximately 26 hours per workweek during which Plaintiff performed cleaning, sidework, and food-preparation duties constituting a separate non-tipped occupation. See 29 C.F.R. § 531.56(e).

101. In the further alternative, Defendants' deductions for credit-card processing, customer walkouts, and flatware replacement reduced Plaintiff's compensation below the applicable minimum wage in violation of 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35.

102. Defendants' violations of § 206(a) were willful within the meaning of 29 U.S.C. § 255(a), and Defendants did not act in good faith or on reasonable grounds within the meaning of 29 U.S.C. § 260.

103. As a direct and proximate result, Plaintiff and the FLSA Collective have suffered damages consisting of unpaid minimum wages, and are entitled under 29 U.S.C. § 216(b) to recover those unpaid wages, an additional equal amount as liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT II
**Failure to Pay Overtime Compensation — Fair Labor Standards Act**
**29 U.S.C. §§ 207(a), 216(b)**
**(On Behalf of Plaintiff and the FLSA Collective)**

104. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 103 above as though fully set forth herein.

105. Section 207(a)(1) of the FLSA requires a covered employer to compensate each employee at a rate not less than one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek.

106. Plaintiff regularly worked approximately seventy-one (71) hours per workweek — approximately thirty-one (31) hours of overtime each week — throughout her employment.

107. Defendants never paid Plaintiff any overtime premium for any overtime hour worked.

108. Because Defendants are not entitled to any tip credit, Plaintiff's regular rate for overtime purposes is not less than the full applicable minimum wage, and her overtime rate is not less than one and one-half times that amount. Tips are not wages paid by the employer and may not be credited against the overtime premium. See 29 C.F.R. §§ 531.60, 778.5.

109. Defendants' violations of § 207(a) were willful within the meaning of 29 U.S.C. § 255(a), and Defendants did not act in good faith within the meaning of 29 U.S.C. § 260.

110. As a direct and proximate result, Plaintiff and the FLSA Collective are entitled under 29 U.S.C. § 216(b) to recover their unpaid overtime compensation, an additional equal amount as liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT III
**Unlawful Retention of Employee Tips — Fair Labor Standards Act**
**29 U.S.C. §§ 203(m)(2)(B), 216(b)**
**(On Behalf of Plaintiff and the FLSA Collective)**

111. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

112. Section 203(m)(2)(B) of the FLSA provides that an employer "may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

113. Defendants kept portions of Plaintiff's and the FLSA Collective members' tips by deducting six percent (6%) of all credit-card gratuities in excess of Defendants' actual proportionate credit-card processing costs.

114. Each such practice constituted the keeping of employee tips by the employer in violation of 29 U.S.C. § 203(m)(2)(B).

115. Defendants' violations were willful and repeated.

116. Pursuant to 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective are entitled to recover the full amount of tips unlawfully kept by Defendants, an additional equal amount as liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

**COUNT IV**
**Retaliation — Fair Labor Standards Act**
**29 U.S.C. §§ 215(a)(3), 216(b)**
**(On Behalf of Plaintiff Individually)**

117. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 116 above as though fully set forth herein.

118. Section 215(a)(3) of the FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to " the Act, "or has testified or is about to testify in any such proceeding."

119. Plaintiff engaged in protected activity when she refused to provide false information about her hours and pay to investigators from the Missouri Division of Labor Standards during their first visit to the restaurant, and when she thereafter filed a wage complaint with that agency.

120. Defendants took adverse action against Plaintiff because of that protected activity, including by harassing her, threatening her continued employment, and threatening the safety of her family — conduct that would dissuade a reasonable worker from making or supporting a charge of unlawful pay practices.

121. A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions, as demonstrated by the close temporal proximity between Plaintiff's refusal to give false information and the onset of the threats, and by Defendants' express statement that any employee who reported the restaurant would lose his or her job.

122. As a direct and proximate result, Plaintiff has suffered lost wages, emotional distress, and other damages, and is entitled under 29 U.S.C. § 216(b) to legal and equitable relief including wages lost, an additional equal amount as liquidated damages, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT V**
**Failure to Pay Minimum Wage — Missouri Minimum Wage Law**
**Mo. Rev. Stat. §§ 290.502, 290.512, 290.527**
**(On Behalf of Plaintiff and the Missouri Class)**

123. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 122 above as though fully set forth herein.

124. Missouri Revised Statutes § 290.502 requires every employer to pay each employee not less than the applicable Missouri minimum wage for every hour worked.

125. Missouri Revised Statutes § 290.512.1 permits an employer of an employee "who receives and retains compensation in the form of gratuities" to pay a cash wage of not less than fifty percent (50%) of the minimum wage, but requires that "total compensation for such employee shall total at least the minimum wage … the difference being made up by the employer."

126. Defendants paid Plaintiff and the Missouri Class no cash wage at all — not fifty percent of the minimum wage, and not any percentage of it.

127. Further, Defendants did not permit Plaintiff and the Missouri Class to "receive and retain" their gratuities, because Defendants took a portion of those gratuities through the 6% credit-

card deduction, the dine-and-dash chargebacks, the flatware assessments, and the monthly tip turn-in requirement. Section 290.512.1 therefore does not apply, and Defendants owed Plaintiff and the Missouri Class the full Missouri minimum wage for every hour worked.

128. Defendants never made up any difference between Plaintiff's tips and the Missouri minimum wage in any workweek.

129. Defendants' conduct violated Mo. Rev. Stat. §§ 290.502 and 290.512.

130. Pursuant to Mo. Rev. Stat. § 290.527, Defendants are liable to Plaintiff and each member of the Missouri Class for the full amount of the wage rate, plus an additional amount equal to twice the unpaid wages as liquidated damages, less any amount actually paid, together with costs and reasonable attorneys' fees.

131. Any agreement between Plaintiff and Defendants to work for less than the applicable wage rate — including Defendants' statement at hire that Plaintiff would be paid only in tips — is no defense to this action. Mo. Rev. Stat. § 290.527.

**COUNT VI**
**Failure to Pay Overtime Compensation — Missouri Minimum Wage Law**
**Mo. Rev. Stat. §§ 290.505, 290.527**
**(On Behalf of Plaintiff and the Missouri Class)**

132. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 131 above as though fully set forth herein.

133. Missouri Revised Statutes § 290.505.1 provides that "[n]o employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [s]he is employed."

134. Plaintiff and the Missouri Class regularly worked approximately seventy-one (71) hours per workweek.

135. Defendants paid Plaintiff and the Missouri Class no overtime compensation of any kind.

136. No exemption under Mo. Rev. Stat. § 290.505.3 or 29 U.S.C. § 213 applies to Plaintiff or the Missouri Class.

137. Because Defendants are not entitled to reduce the cash wage under Mo. Rev. Stat. § 290.512, the regular rate for overtime purposes is not less than the full Missouri minimum wage in effect for each year at issue, and the overtime rate is not less than one and one-half times that amount.

138. Pursuant to Mo. Rev. Stat. § 290.527, Defendants are liable to Plaintiff and each member of the Missouri Class for the full amount of the unpaid overtime wage rate, plus an additional amount equal to twice the unpaid wages as liquidated damages, less any amount actually paid, together with costs and reasonable attorneys' fees.

## COUNT VII
## Unjust Enrichment / Quantum Meruit
## (Pleaded in the Alternative, on Behalf of Plaintiff and the Missouri Class)

139. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 138 above as though fully set forth herein.

140. This Count is pleaded in the alternative to Counts I, II, V, and VI, and to the extent any portion of Plaintiff's or the Missouri Class's work falls outside the coverage of the FLSA or the MMWL.

141. Plaintiff and the Missouri Class conferred a benefit upon Defendants by performing approximately seventy-one hours of labor per week in Defendants' restaurant.

142. Defendants appreciated and had knowledge of that benefit, having personally set the schedules under which the work was performed and having personally supervised its performance.

143. Defendants accepted and retained that benefit without paying the reasonable value of the services rendered.

144. Under the circumstances — including Defendants' deliberate failure to keep records, the manufactured payroll checks, and the threats against employees who might report Defendants — it would be inequitable and unjust for Defendants to retain the benefit of that labor without payment.

145. Plaintiff and the Missouri Class are entitled to recover the reasonable value of the services they rendered, together with prejudgment interest.

**COUNT VIII**
**Conversion of Gratuities**
**(On Behalf of Plaintiff and the Missouri Class)**

146. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 145 above as though fully set forth herein.

147. Gratuities left by customers for Plaintiff and the Missouri Class were the property of the employees who received them. See 29 U.S.C. § 203(m)(2)(B).

148. Plaintiff and the Missouri Class had an immediate right to possession of those gratuities in identifiable, specific sums — namely, the six percent (6%) withheld from each credit-card gratuity, the amounts charged for unpaid customer bills, the approximately $40.00 flatware assessments, and the fixed monthly sums the servers were required to hand over to Defendant.

149. Defendants wrongfully exercised dominion and control over those specific funds in derogation of the rights of Plaintiff and the Missouri Class.

150. Defendants' conduct was intentional, and was undertaken with knowledge that the funds belonged to the employees.

151. Plaintiff and the Missouri Class have been damaged in the amount of the converted gratuities, together with prejudgment interest. Because Defendants acted intentionally and with complete indifference to and conscious disregard for the rights of their employees, Plaintiff and the Missouri Class are further entitled to punitive damages under Mo. Rev. Stat. § 510.261.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ri Rong Wang, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in her favor and against Defendants Lucky Seven Buffet Inc. and Zhu Ming Lu, individually and d/b/a Asian Buffet, and grant the following relief:

A. Designating this action as a collective action under 29 U.S.C. § 216(b), conditionally certifying the FLSA Collective, appointing Plaintiff as representative of the collective and undersigned counsel as collective counsel, and authorizing prompt issuance of notice to all putative collective members advising them of their right to opt in;

B. Ordering Defendants to produce, in computer-readable form, a list of the names, last known addresses, telephone numbers, email addresses, job titles, and dates of employment of all putative collective members;

C. Certifying the Missouri Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointing Plaintiff as class representative, and appointing undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23(g);

D. Declaring that Defendants violated the Fair Labor Standards Act, including 29 U.S.C. §§ 206, 207, 203(m), and 215(a)(3), and that Defendants' violations of the minimum-wage, overtime, and tip-retention provisions of the FLSA were willful;

E. Declaring that Defendants violated the Missouri Minimum Wage Law, including Mo. Rev. Stat. §§ 290.502, 290.505, 290.512;

F. Awarding Plaintiff and the FLSA Collective all unpaid minimum wages and overtime compensation, plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

G. Awarding Plaintiff and the FLSA Collective all tips unlawfully kept by Defendant, plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §§ 203(m)(2)(B) and 216(b);

H. Awarding Plaintiff and the Missouri Class all unpaid minimum wages and overtime compensation, plus an additional amount equal to twice the unpaid wages as liquidated damages, pursuant to Mo. Rev. Stat. § 290.527;

I. Awarding Plaintiff all relief available for retaliation under 29 U.S.C. § 215(a)(3), including lost wages, an equal amount in liquidated damages, compensatory damages for emotional distress, and punitive damages;

J. Awarding Plaintiff and the Missouri Class the reasonable value of services rendered on their alternative claim for unjust enrichment and quantum meruit;

K. Awarding Plaintiff and the Missouri Class compensatory and punitive damages on their claim for conversion of gratuities;

L. Awarding prejudgment and post-judgment interest at the maximum rate allowed by law;

M. Awarding Plaintiff her reasonable attorneys' fees, expert fees, litigation expenses, and costs of this action pursuant to 29 U.S.C. § 216(b) and Mo. Rev. Stat. § 290.527;

N. Awarding a service award to Plaintiff for her service to the collective and the class; and

O. Granting such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.


By: *<u>/s/ Sophie Woodworth</u>*_______
Sophie Woodworth, MO #49383
Holman Schiavone, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Phone: 816.447.3003
Fax: 816.447.3003
swoodworth@hslawllc.com

**ATTORNEY FOR PLAINTIFF AND THE PUTATIVE COLLECTIVE AND CLASS**